UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ADIL LAHRICHI,

    Plaintiff,

    v.

LUMERA CORPORATION, a Delaware corporation; MICROVISION, INC., a Delaware corporation; and THOMAS D. MINO,

    Defendants.

CASE NO. C04-2124C

ORDER

This matter comes before the Court on Defendants' Motion To Compel Plaintiff's Production of Medical Records or, in the Alternative, To Dismiss Plaintiff's Claim for Emotional Distress Damages (Dkt. No. 34) ("Defs.' Mot."), Plaintiff's Response (Dkt. No. 41) ("Pl.'s Resp."), and Defendants' Reply (Dkt. No. 46) ("Defs.' Reply").  The Court has considered the papers submitted by the parties and determined that oral argument is unnecessary.  The Court hereby GRANTS in part and DENIES in part Defendants' motion and rules as follows.

## I. BACKGROUND

The underlying suit involves claims by Plaintiff of discrimination under 42 U.S.C. § 2000(e), § 1981, and RCW 49.60, and common law causes of action for negligent supervision, negligent infliction of

ORDER – 1

emotional distress, and intentional infliction of emotional distress. Plaintiff seeks emotional distress damages as the result of wrongful termination, as well as damages resulting from an increase of involuntary facial movements (a preexisting condition allegedly exacerbated by Defendants' conduct). The instant motion brings before the Court a discovery dispute wherein the parties seek to resolve the extent to which Plaintiff must produce medical records and/or releases to Defendants.

Defendants seek (1) complete supplementation of Plaintiff's answer to Interrogatory No. 2 of Defendants' Fourth Set of Discovery Requests to Plaintiff ("Interrog. No. 2"), which requests identification of "every physician, psychologist, psychiatrist, counselor, mental health professional, doctor, physical therapist or other health care provider" seen by Plaintiff since January 1, 1989 "for purposes of diagnosis, treatment, assessment, counseling or any other care"; (2) production of "all medical records" related to Plaintiff's preexisting neurological movement disorder, Posttraumatic Stress Disorder ("PTSD"), "and any other aspect of his emotional distress claim by completing and executing HIPAA-compliant medical authorization forms (to be provided by Defendants)"; (3) two additional hours to depose Plaintiff about his emotional distress damages after Defendants receive all discoverable medical records; and (4) $5000 in attorney's fees. (Defs.' Mot. Second Proposed Order 2.) In the alternative, Defendants seek dismissal of all of Plaintiff's claims for emotional distress damages and causes of action for intentional and negligent infliction of emotional distress. (Defs.' Mot. First Proposed Order 1–2.) Plaintiff opposes all of the above (and specifically opposes discovery of pre-1996 medical records) but would agree to one additional hour of deposition time with Plaintiff. (Pl.'s Resp. Proposed Order 2.) Plaintiff also requests that this Court conduct an in camera review of any additional records disclosed and redact highly personal information before allowing Defendants to see the records. (Pl.'s Resp. 11–12.)

The parties have satisfied the meet-and-confer requirement of Federal Rule of Civil Procedure 37(a)(2) through their ongoing letters, phone calls, and emails documented in their papers on this motion.

## II. ANALYSIS

The instant discovery dispute centers on relevance. Federal Rule of Civil Procedure 26(b)(1)

ORDER – 2

1  provides:

2  > Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

3

4

5  FED. R. CIV. P. 26(b)(1). In order to reduce the element of surprise and facilitate settlement, courts

6  liberally construe pretrial discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).

7        This dispute involves Plaintiff's past medical records that relate to two different medical

8  conditions: (1) PTSD and (2) involuntary movements and/or "dystonia." (Defs.' Mot. 3; Pl.'s Resp. 2.)

9  It is disputed whether the two conditions are related: Defendants contend that they are related (Defs.'

10  Mot. 3–4), while Plaintiff maintains that they are not (Pl.'s Resp. 2–3, 8–9). Further, according to

11  Plaintiff, the involuntary movement disorder alone is the subject of his "exacerbation" damages claim.

12  (*Id.* at 8.) Plaintiff argues that any PTSD-related or psychological treatment records from the past are

13  privileged, as well as irrelevant—first because they do not relate to the movement disorder and second

14  because they have no bearing on any (new) emotional damages resulting from Plaintiff's alleged

15  termination by Defendants. (*Id.* at 8–11.) That the records relating to the involuntary movement

16  disorder are relevant is not in dispute. (*Id.* at 8.) Therefore, whether the two conditions are related will

17  determine whether any PTSD and other psychological treatment records are relevant and thus

18  discoverable.

19        Plaintiff asserts that Defendant has improperly conflated PTSD and the involuntary movement

20  disorder, and states that he did not claim, "nor did his wife confirm, that he experienced PTSD in the mid-

21  1990s." (Pl.'s Resp. 3.) Plaintiff also points out that he answered as a layperson, not a physician, when

22  questioned during his deposition. (*Id.* n.1.) However, Plaintiff's deposition illustrates at least one source

23  of Defendants' impression that the two conditions are linked. After saying that following a near plane

24  crash in 1989 he developed and was treated for a "neurology problem resulting in post-traumatic stress

25  problems that resulted in a neurological disorder" (Curran Decl. Ex. B at 33 (Lahrichi Dep. 11:4–8)),

26  ORDER – 3

Plaintiff had the following exchange with Defense counsel:

> Q. Did you suffer from post-traumatic stress disorder at any later date than the time around the plane crash?
> A. After the plane crash?
> Q. At a time at some later date directly after the plane crash, say in, you know, '92 and beyond.
> A. Sometimes I had a movement.

(*Id.* at 34 (Lahrichi Dep. 17:12–18).) This exchange illustrates why Defendants are reasonably inquisitive about the linkage of the two conditions—when asked a question about one condition, Plaintiff answered by describing the other. While Plaintiff's argument about his own stress during the deposition (*see* Pl.'s Resp. 6) is well-taken—as is the point that he is not a physician—the Court nevertheless finds that there is justification for Defendants' request to explore the history of both conditions to the extent that they are linked. The Court need not presently determine whether the conditions are in fact linked—it is sufficient to find that the PTSD and psychological treatment records are relevant to the extent they are part of Plaintiff's medical history with the involuntary movement disorder. Thus, the records from 1989 forward tending to *link* PTSD or other psychological conditions to the involuntary movement disorder—as a cause or an effect of such disorder—are discoverable because Plaintiff's lawsuit claims that this disorder was exacerbated by Defendants' conduct and Defendants have the right to learn the nature and history of the disorder that they allegedly exacerbated.

However, Defendants are *not* entitled to old records that relate to PTSD (or other psychological treatment) alone (*i.e.*, records that do not address the involuntary movement disorder's causes or effects or any diagnosis thereof), because Plaintiff has not claimed in this lawsuit that his past PTSD or any other psychological condition was exacerbated. Thus, any past records pertaining *only* to past PTSD or other treatment for past psychological conditions that are *not* related to the involuntary movement disorder are not discoverable, because they are not relevant to Plaintiff's (new) emotional distress allegedly caused by Defendants' conduct *or* to exacerbation of the involuntary movement disorder. Defendants' claim (Defs.' Reply 2) that they need past PTSD or other psychological treatment records to effectively defend against

ORDER – 4

Plaintiff's claim for "garden variety" emotional distress damages allegedly caused by Defendants (regardless of the exacerbation claim) is meritless. Defendants currently have all of Plaintiff's medical records from 2000 to the present regarding emotional distress resulting from his alleged termination in 2002 (Pl.'s Resp. 4). Any attribution of current emotional distress symptoms to a preexisting psychological condition would show up in records Defendants already have, and digging into older records will add nothing to a current diagnosis of the cause of current emotional distress.

Plaintiff objects to discovery of *any* records that are 14 years old (or, presumably, older). Regardless of their age, however, the records relating to the preexisting condition for which Plaintiff seeks exacerbation damages are relevant and discoverable. The Court's limits on the scope of the records to be produced pursuant to this Order sufficiently quell the "fishing expedition" potential of Defendants' request. Further, (now 17-year-old) records are not being compelled by this Court as to the new emotional distress damages allegedly caused by Defendants, so the temporal objection as to those records is moot.

Having determined that records from 1989 forward showing a link between PTSD or other psychological conditions and the involuntary movement disorder are relevant, the Court further finds that Plaintiff's psychotherapist–patient privilege assertion,[1] raised for the first time in his Response to the instant motion, is raised too late. *See* FED. R. CIV. P. 33(b)(4). Moreover, even if the privilege objection were not untimely, the Court finds that any privilege objection is waived[2] as to PTSD and other psychological treatment records necessary to the evaluation of the involuntary movement disorder

---

[1] Federal privilege law applies where, as here, a federal question claim is brought in federal court and the court exercises supplemental jurisdiction over pendent state law claims. *See e.g., Religious Tech. Center v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992); *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455 (N.D. Cal. 1978). The federal common law recognizes a psychotherapist–patient privilege under Federal Rule of Evidence 501. *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996).

[2] The Supreme Court specifically stated in recognizing the privilege that a patient may waive the protection. *Jaffee*, 518 U.S. at 15 n.14.

ORDER – 5

exacerbation claim, because such claim renders that disorder squarely at issue in this case. *Cf. Fitzgerald v. Cassil*, 216 F.R.D. 632, 636 (N.D. Cal. 2003) (noting the absence of an exacerbation claim before finding no waiver of privilege regarding "garden-variety" emotional distress claims). The Court need not determine whether the psychotherapist–patient privilege is waived as to *new* emotional distress damages[3] or past medical or psychological conditions of Plaintiff that are *independent* of his involuntary movement disorder, because production of such records is not compelled by this Order. Like the preceding relevance ruling, the waiver-of-privilege ruling here is limited to records implicated by Plaintiff's damages claim as to exacerbation of the involuntary movement disorder.

      Plaintiff raises considerable privacy concerns about disclosure of old PTSD or psychological treatment records and, as an alternative to totally denying Defendants' motion, Plaintiff requests that this Court conduct an in camera review of medical records to redact highly personal information, which would be identified in "requests for redactions" by Plaintiff. (Pl.'s Resp. 11–12.) The Court declines any potential invitation to receive ex parte communication via Plaintiff's "requests" and further finds that an in camera review is unnecessary, given the relevancy and discoverability determinations made *supra*. As to the privacy concerns of Plaintiff, the Court notes the following: The Court's limitation on discovery of PTSD and other psychological records to those tending to show a link to the involuntary movement disorder is narrowly tailored so as to avoid disclosure of records that are privileged and/or irrelevant. The records compelled here are not discoverable *because of* any details they may contain about Plaintiff's discussions with treatment providers or other private information; rather, they are discoverable because of their utility in determining whether PTSD or other stresses may exacerbate the involuntary movement disorder today because they did so in the past or because they are a known cause or effect of the disorder. They can aid understanding of the involuntary movement disorder. Nevertheless, the records

---

[3] Further, the privilege issue is moot to the extent that Plaintiff has already produced medical records from 2000 to the present regarding emotional distress resulting from his alleged termination in 2002. (*See* Pl.'s Resp. 4.)

ORDER – 6

compelled by this Order likely will contain private information that should be protected at some heightened level. The Stipulated Protective Order of the parties (Dkt. No. 14) defines medical records as per se "confidential" (Stip. Prot. Order 2–3). Pursuant to that protective order, such documents must be filed under seal and only are allowed to be used for purposes of this litigation. Because unnecessary persons (such as non-expert witnesses) may have access to medical records under the Stipulated Protective Order, the Court finds that an additional measure is needed to provide for Plaintiff's legitimate privacy concerns regarding records produced pursuant to this Order. Therefore, a "HIGHLY CONFIDENTIAL—SEALED" protective order similar to the one attached to the financial records ordered produced by this Court on September 30, 2005 (Dkt. No. 45) shall apply to the medical records produced pursuant to this Order, as set forth below.

Defendants' request that the Court dismiss all emotional distress damages and causes of action for intentional and negligent infliction of emotional distress is unwarranted. Plaintiff already has provided records regarding new emotional distress (Pl.'s Resp. 4) and, pursuant to this Order, Plaintiff will produce records regarding the exacerbation damages. Defendants' preparation for their case has not been prejudiced beyond repair by Plaintiff's tardiness in production of records or the genuine dispute as to their relevance and privilege now resolved by this Order.

The Federal Rules of Civil Procedure provide for sanctions, including reasonable attorney's fees, if a motion to compel disclosure or discovery is granted, as here. FED. R. CIV. P. 37(a)(4)(A). However, contrary to Defendants' characterization (Defs.' Mot. 12), the rule does not *require* the Court to grant fees, particularly where an objection to discovery was "substantially justified" or where "other circumstances make an award of expenses unjust." *Id.* Here, the dispute was a legitimate one, involving complex privacy, privilege, and relevance determinations. Further, despite the merits raised by both parties, each has proceeded to take extreme positions, causing an overall inability to reach agreement where one might have been reached without the Court's involvement. The Court will not entertain a request for fees under these circumstances.

ORDER – 7

Finally, given the contentious dispute leading up to this motion and the uncertainty about the extent of the records that Defendants would be entitled to discover regarding new emotional distress and/or the exacerbation claim, the Court finds it appropriate to grant Defendants their requested two additional[4] deposition hours with Plaintiff following production of records pursuant to this Order.

## III. CONCLUSION

Defendants' Motion to Compel Plaintiff's Production of Medical Records or, in the Alternative, To Dismiss Plaintiff's Claim for Emotional Distress Damages is hereby GRANTED in part and DENIED in part. Accordingly, the Court ORDERS as follows:

(1) Defendants' request to dismiss all of Plaintiff's claims for emotional distress damages and causes of action for intentional and negligent infliction of emotional distress is DENIED;

(2) Within five (5) days of the entry of this Order, Plaintiff shall identify every physician, psychologist, psychiatrist, counselor, mental health professional, doctor, physical therapist or other health care provider he has seen from January 1, 1989 to the present for purposes of diagnosis, treatment, assessment, counseling or any other care, which he has not previously identified *and* whose records discuss, document, or diagnose any potential link between (a) PTSD, psychological, or other stress conditions and (b) Plaintiff's involuntary movement disorder and/or "dystonia";

(3) Within five (5) days of the entry of this Order, Plaintiff shall produce all medical records from January 1, 1989 to the present related to his preexisting involuntary movement disorder and/or "dystonia," including PTSD, psychological, or other stress condition records discussing, documenting, or diagnosing any potential link between (a) PTSD, psychological, or other stress conditions and (b) Plaintiff's involuntary movement disorder and/or "dystonia," by completing and executing HIPAA-compliant medical authorization forms (to be provided by Defendants);

(4) Protective Order:

---

[4] Apparently this would be in addition to the already agreed-upon two additional hours needed to complete Plaintiff's April 2005 deposition. (*See* Defs.' Mot. 12 n.6.)

ORDER – 8

      (a) Materials produced pursuant to Orders 2 and 3 may be disclosed only to the following persons: (i) counsel of record for any party to this action; (ii) those assisting counsel for any party to this action; (iii) this Court, including personnel and court reporters engaged in proceedings that are necessarily incidental to preparation for trial and the actual trial of this action; (iv) any outside expert, consultant, or investigator retained by any party in connection with this action, to the extent that such disclosure is necessary in connection with this action; and (v) the parties themselves, to the extent necessary for the purposes of this action (for parties that are entities, disclosure pursuant to this subparagraph is limited to those employees or officers of the party who have a need to receive the information consistent with the purposes of this action);

      (b) Defendants shall only use the documents produced pursuant to Orders 2 and 3 for purposes of this litigation and shall ensure that no persons except those listed in Order 4(a) have access to the documents or the information therein.  The documents produced pursuant to Orders 2 and 3 shall not be docketed for any reason unless they are designated "HIGHLY CONFIDENTIAL—SEALED SUBJECT TO COURT ORDER" and also filed under seal.  Any pleadings and court filings that incorporate, disclose, or refer to the documents produced pursuant to Orders 2 and 3 also shall be designated "HIGHLY CONFIDENTIAL—SEALED SUBJECT TO COURT ORDER" and filed under seal.  The documents produced pursuant to Orders 2 and 3 shall not be available to the public or to non-expert witnesses unless and until they become necessary as part of Defendants' presentation at trial and then are released by order of this Court.  The provisions of the parties' Stipulated Protective Order, dated December 22, 2004 (Dkt. No. 14) apply to documents produced pursuant to Orders 2 and 3, except where those provisions differ from this Order.  Further, documents produced pursuant to Orders 2 and 3 shall be considered "highly confidential" even without an actual designation as such on their face, envelope, or container;

(5) Plaintiff's request for an in camera review of medical records deemed discoverable by Orders

ORDER – 9

2 and 3 is DENIED;

(6) Defendants' request for attorney's fees incurred in bringing this motion is DENIED; and

(7) Defendants are GRANTED two additional hours to depose Plaintiff about both (a) damages resulting from exacerbation of Plaintiff's preexisting involuntary movement disorder and (b) Plaintiff's "garden variety" emotional distress damages claims, after Defendants receive all discoverable medical records.

SO ORDERED this 1st day of November, 2005.

*John C. Coughenour*

John C. Coughenour

United States District Judge

ORDER – 10