UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ADIL LAHRICHI,

    Plaintiff,

  v.

LUMERA CORPORATION, a Delaware corporation; MICROVISION, INC., a Delaware corporation; and THOMAS D. MINO,

    Defendants.

CASE NO. C04-2124C

ORDER

    This matter comes before the Court on Defendants' Motion for Sanctions (Dkt. No. 72) ("Defs.' Mot."), Plaintiff's Response (Dkt. No. 80) ("Pl.'s Resp."), and Defendants' Reply (Dkt. No. 85) ("Defs.' Reply"). The Court has considered the papers submitted by the parties and determined that oral argument is unnecessary. The Court hereby GRANTS IN PART and DENIES IN PART Defendants' motion and rules as follows.

**I. BACKGROUND**

    The underlying suit involves claims by Plaintiff of discrimination under 42 U.S.C. § 2000(e), § 1981, and RCW 49.60, and common law causes of action for negligent supervision, negligent infliction of emotional distress, and intentional infliction of emotional distress. Plaintiff seeks emotional distress and

ORDER – 1

economic damages as the result of wrongful termination, as well as punitive damages and damages resulting from an increase of involuntary facial movements and/or "dystonia" (a preexisting condition allegedly exacerbated by Defendants' conduct). The instant motion again brings before the Court two discovery disputes that have been ruled on in substance—one about disclosure of medical and psychological treatment records (*see* Order (Dkt. No. 54)) and the other about disclosure of financial records (*see* Minute Order (Dkt. No. 45)). Defendants now seek sanctions for Plaintiff's alleged noncompliance with these orders.

Defendants seek (1) full compliance with this Court's November 1, 2005 Order regarding production of Plaintiff's medical and psychological treatment records within one business day, and, if such compliance does not occur, Defendants seek dismissal of claims for exacerbation of Plaintiff's involuntary movement disorder and a prohibition on introducing evidence or testimony at trial about a link between that disorder and the actions of Defendants; (2) full compliance with this Court's September 30, 2005 Minute Order regarding production of financial records within one business day, and, if such compliance does not occur, Defendants seek a prohibition on Plaintiff testifying at trial about financial vulnerability and its alleged connection to emotional distress; and (3) costs and fees incurred in bringing the instant motion, in the amount of $4,750.00. (Defs.' Mot. Proposed Order 2; Defs.' Reply 6.)

Plaintiff opposes the imposition of sanctions, arguing that the medical/psychological records Order did not require production of "all records relating to dystonia" (Pl.'s Resp. 3–4) and that the purpose of the financial records Minute Order was to compel production of information about income, not assets (*id.* at 2). Plaintiff also argues that a refusal to produce any further financial records should not deny him the right to pursue his emotional distress claims as they relate to lost income. (*Id.*)

## II. ANALYSIS

Federal Rule of Civil Procedure 37(b)(2) provides that the Court may impose a variety of sanctions for failure to comply with an order. Under this rule, the Court has broad discretion to impose appropriate sanctions, including but not limited to ordering attorney's fees for the costs of bringing the

ORDER – 2

motion for sanctions, striking pleadings or claims, dismissing the action in whole or in part, and imposing prohibitions on introducing particular evidence or testimony at trial. The Court also has the inherent power to impose sanctions under a variety of circumstances.

**A. Medical and Psychological Treatment Records**

Defendants' motion to compel production of Plaintiff's records sought production of records related to Plaintiff's preexisting neurological movement disorder, Posttraumatic Stress Disorder ("PTSD"), and other psychological conditions. (Order (Dkt. No. 54) 2.) As to scope, the motion sought "old" records dating back to January 1, 1989.

In its November 1, 2005 Order, this Court began its analysis by distinguishing between two bodies of records—(1) those that relate to Plaintiff's involuntary movement disorder and/or "dystonia" and (2) those that relate to Plaintiff's PTSD or psychological treatment. As it defined the question at hand, the Court specifically noted that there was *no dispute* between the parties about whether "old" records *relating to the involuntary movement disorder* (the first category) were relevant, because Plaintiff conceded their relevance in his opposition to the motion. (*Id.* at 3 (citing Plaintiff's legal argument that old medical records are *only* relevant to the involuntary movement disorder exacerbation claim and not to "garden variety" emotional distress claims).) Put simply, "records relating to the preexisting condition for which Plaintiff seeks exacerbation damages are relevant and discoverable" regardless of their age. (*Id.* at 5.) This would have held true even if Plaintiff had disputed their relevance in his motion papers.

What *was* disputed in the motion papers—and what this Court decided in the November 1, 2005 Order—was whether "old" (dating back to January 1, 1989) *PTSD or psychological treatment* records (the second category) would be "relevant and thus discoverable." (*Id.* at 3.) This Court found that the disputed PTSD or psychological treatment records are relevant and discoverable *if* they relate to the involuntary movement disorder—in other words, if the two categories of records overlap. Specifically,

> the records from 1989 forward tending to *link* PTSD or other psychological conditions to the involuntary movement disorder—as a cause or an effect of such disorder—are discoverable because Plaintiff's lawsuit claims that this disorder was exacerbated by

ORDER – 3

1
2
3
4
5
6
    Defendants' conduct and Defendants have the right to learn the nature and history of the disorder that they allegedly exacerbated.
    However, Defendants are *not* entitled to old records that relate to PTSD (or other psychological treatment) alone (*i.e.*, records that do not address the involuntary movement disorder's causes or effects or any diagnosis thereof), because Plaintiff has not claimed in this lawsuit that his past PTSD or any other psychological condition was exacerbated. Thus, any past records pertaining *only* to past PTSD or other treatment for past psychological conditions that are *not* related to the involuntary movement disorder are not discoverable, because they are not relevant to Plaintiff's (new) emotional distress allegedly caused by Defendants' conduct *or* to exacerbation of the involuntary movement disorder.

7
8
9
10
(*Id.* at 4.) The Court emphasized that the reason *certain* PTSD or other psychological treatment records are relevant is because they might shed light on the involuntary movement disorder. (*See, e.g., id.* at 6:22.) Indeed, the unifying theme of the Order was that information about the condition Defendants allegedly exacerbated is relevant.

11
12
13
14
15
16
    Plaintiff's current position appears to be that he only has to produce records that relate to a *link* between PTSD or other psychological conditions and the involuntary movement disorder, and that he does not have to produce records related to the involuntary movement disorder alone. However, the notion that the November 1, 2005 Order "does not require Dr. Lahrichi to 'turn over records relating to dystonia'" (Defs.' Mot., Curran Decl. Ex. F; Pl.'s Resp. 3–4) is legally untenable, given the analysis set forth in the November 1, 2005 Order and reproduced above.

17
18
    Furthermore, the Court *specifically ordered* "dystonia" or involuntary movement disorder records produced, as follows:

19
20
21
    (3) Within five (5) days of the entry of this Order, Plaintiff shall produce *all medical records from January 1, 1989 to the present related to his preexisting involuntary movement disorder and/or "dystonia," including* PTSD, psychological, or other stress condition records discussing, documenting, or diagnosing any potential link between (a) PTSD, psychological, or other stress conditions and (b) Plaintiff's involuntary movement disorder and/or "dystonia," . . . .

22
23
24
25
(Order (Dkt. No. 54) 8 (emphasis added).) The purpose of the specific order (3) quoted above is to compel production of records "related to [Plaintiff's] preexisting involuntary movement disorder and/or 'dystonia,'" (*i.e.*, the first category, including where first category overlaps with the second) just as it says. However, Plaintiff seems to think that he only has to produce what follows the word "including"

26
ORDER – 4

(*i.e.*, only the records where the two categories overlap but not all the records in the first category) and therefore says that there is nothing to produce because such records do not exist. Plaintiff is incorrect about what needs to be produced. Further, regardless of the existence of any records related to a *link*, records simply related to Plaintiff's preexisting involuntary movement disorder and/or "dystonia" apparently exist, as they are referenced in Plaintiff's own statements to the Court. (Pl.'s Resp., Lahrichi Decl. & Ex. p. 16–17.) Yet these records, clearly compelled by court order, have not been produced. Plaintiff's failure to produce even these records is inexplicable. Plaintiff's overall failure to produce any of the releases ordered (or the records) is a violation of the November 1, 2005 Order.[1]

More troubling than Plaintiff's violation of the November 1, 2005 Order is his unilateral decision to withhold records and provider identities without submitting to the Court any support whatsoever from any medical professional that justifies his position as he opposes the instant motion for sanctions. Plaintiff is not a medical doctor, but evidently he has decided that he alone may decide what records must be produced pursuant to the Court's November 1, 2005 Order. (Pl.'s Resp., Lahrichi Decl. & Ex. p.

---

[1] Not only did the Court order production of records by the completion of releases, the Court also ordered production of medical provider identities, as follows:

> (2) Within five (5) days of the entry of this Order, Plaintiff shall identify every physician, psychologist, psychiatrist, counselor, mental health professional, doctor, physical therapist or other health care provider he has seen from January 1, 1989 to the present for purposes of diagnosis, treatment, assessment, counseling or any other care, which he has not previously identified *and* whose records discuss, document, or diagnose any potential link between (a) PTSD, psychological, or other stress conditions and (b) Plaintiff's involuntary movement disorder and/or "dystonia."

(Order (Dkt. No. 54) 8.) Admittedly, this specific order only technically compels production of health care provider identities where the "diagnosis, treatment, assessment, counseling," or other care relate to the *link* between the involuntary movement disorder and PTSD, psychological, or other stress conditions. However, Plaintiff cannot defend his position on this technical aspect of the Order. The specific order about provider identities was so worded precisely because the Court found no dispute as to the relevance of records (and provider identities) that related *only* to the involuntary movement disorder. Further, in light of the records ordered produced, it is not reasonable to assume that the records should have been produced without identifying where they came from or who the providers were. Thus, the Order as a whole mandated production of the identities of providers seen for the involuntary movement disorder alone, as well as its possible link to PTSD or other psychological conditions, and Plaintiff's failure to produce this information is a violation of the Order.

ORDER – 5

16–17.) The Court gave Plaintiff the benefit of the doubt in constructing its November 1, 2005 Order, contemplating that there was a body of psychological records that were irrelevant to the exacerbation claim and should be protected, and proceeding on the assumption that Plaintiff would engage in good faith conduct in response to the Order. The Court now sees that Plaintiff has not presented a medically or legally defensible reason for his total failure to produce records or provider identities pursuant to this Court's Order, and the Court finds Plaintiff's own declaration regarding the causes and effects of his involuntary movement disorder unconvincing and incredible. Plaintiff's failure to comply with the November 1, 2005 Order is sanctionable.

Further, by his discovery conduct, Plaintiff has forfeited any right to the distinction drawn in the November 1, 2005 Order (which compelled *all* records about the involuntary movement disorder but only *psychological* records involving a link between the involuntary movement disorder and PTSD or other psychological conditions). Plaintiff has forfeited the protection of psychological records that involve no such link. Accordingly, the Court now orders production additional to that ordered on November 1, 2005. Plaintiff is now ordered to produce *all* psychological *and* medical records dating back to January 1, 1989, because the Court finds that any of these may lead to the discovery of admissible evidence on the involuntary movement disorder exacerbation claim.[2] To be clear, Plaintiff must now produce all psychological and medical records *whether or not* they discuss, document, or diagnose any potential link between (a) PTSD, psychological, or other stress conditions and (b) Plaintiff's involuntary movement disorder and/or "dystonia." This production necessarily includes all records relating to the involuntary movement disorder. Plaintiff shall produce these records by signing releases and additionally by

---

[2] The Court notes that its prior determination that "old" (January 1, 1989 through 2000) records pertaining to PTSD or other treatment for past psychological conditions are irrelevant to Plaintiff's new (or "garden variety") emotional distress claims for purposes of discovery remains unchanged. (*See* Order (Dkt. No. 54) 4–5). However, the unrestricted production of "old" psychological records ordered here in relation to the exacerbation claim moots any previous protection of such psychological records on the basis of their irrelevance to new emotional distress.

ORDER – 6

providing copies of all records already in his possession. No redactions are authorized except those already allowed under the parties' stipulated protective order.

**B. Financial Records**

This Court addressed a financial records discovery dispute in its September 30, 2005 Minute Order, granting in part and denying in part both parties' requests. In particular, the Court ordered production of Plaintiff's "*bank statements* for tax year 2005 only, but *not* bank statements or bank records of any kind for any other year." (Order (Dkt. No. 45) 6.) The Court also ordered production of Plaintiff's 2004 income tax return when filed. (*Id.*) These orders were pursuant to the Court's finding that Plaintiff's "*current* financial situation (to the extent it cannot yet—or will not—be reflected in a tax return for tax year 2005) is discoverable." (*Id.* at 4.)

Plaintiff partially complied with the Minute Order, but before providing the bank statements to Defendants, he redacted bank account balances from some of the produced bank statements. Plaintiff now argues that the Court's Minute Order did not contemplate revealing his *assets*, but only his income. Defendants disagree, arguing that the Minute Order compelled information revealing Plaintiff's current financial position, bank assets included. Defendants are correct.

Again, the finding was that Plaintiff's "*current* financial situation (to the extent it cannot yet—or will not—be reflected in a tax return for tax year 2005) is discoverable." (*Id.* at 4.) The quoted phrase includes financial information that *cannot yet* be reflected in a tax return for tax year 2005 because 2005 was not over yet (*e.g.*, income) *and* information that *will not* be reflected in a tax return for tax year 2005 even when such return is filed because it is not "income" (*e.g.*, unliquidated assets, assets in savings). While financial status may have limited relevance in the context of punitive damages (which the Court does not decide here), it is relevant to other damages.

The device granted to address privacy concerns was the heightened protective order imposed on both parties' financial information. Plaintiff's unilateral decision to further assert his (or his wife's) privacy with redactions was not contemplated by the Court and is a violation. Plaintiff's failure to

ORDER – 7

comply fully with the September 30, 2005 Minute Order is sanctionable.

Plaintiff is ordered to produce tax year 2005 bank statements with all balances intact and unredacted.  Plaintiff is further directed to ensure adequate account identification in light of his redaction of account numbers.

**C. Sanctions**

Plaintiff's conduct in this litigation—which he initiated—is sanctionable, as discussed above.  Defendants cannot be expected to prepare for trial without receiving the discovery production to which they are entitled.  Further, because Plaintiff has practically told the Court that he is disinclined to comply with discovery orders on these issues (*see* Pl.'s Resp. 2 ("[s]hould the Court order Dr. Lahrichi to produce unredacted bank statements and he, for privacy reasons chooses not to . . ."); *id.* at 4 ("While Plaintiff's counsel may have been incorrect in her understanding of the Court Order, nevertheless it is Dr. Lahrichi's position that he does not have to disclose his medical records.")), the Court finds rather severe sanctions justified in this case.  Plaintiff cannot be allowed to pursue the claims that he has made without providing information about those claims to Defendants.

Plaintiff must comply with the production of documents and information as described above within one week of the date of this Order.  If Plaintiff does not comply within one week with the production of psychological and medical records ordered here, Defendants are directed to notice the Court.  Upon such notice, Plaintiff's damage claim for exacerbation of his involuntary movement disorder will be dismissed with prejudice, and he will be precluded from introducing any evidence at trial (including his own testimony) about any link between his involuntary movement disorder and the actions of Defendants.  If Plaintiff does not comply within one week with the production of financial records ordered here, Defendants are directed to notice the Court.  Upon such notice, Plaintiff will be subject to a daily monetary sanction of $100 per judicial day that the records remain unproduced.

The Court also finds costs and attorney's fees appropriate.  But for Plaintiff's unjustified failure to comply with court orders that granted motions to compel, this motion for sanctions would have been

ORDER – 8

unnecessary.

Finally, the parties are reminded that discovery orders relate to just that—discovery. They are not determinations of relevance for trial, nor admissibility at trial. Failure to comply with discovery orders hinders the efficiency of litigation and the full disclosure of potentially relevant facts and evidence. Counsel are reminded that attorneys are officers of the Court who are bound by the Rules of Professional Conduct, by the Federal Rules of Civil Procedure, including discovery Rules 26(g) and 37(c), and by the various protective orders in place regarding the sensitive information produced or ordered produced in this litigation.

### III. CONCLUSION

For the reasons set forth in this Order, Defendants' motion is hereby GRANTED IN PART and DENIED IN PART, as follows:

(1) Within one (1) week of the entry of this Order, Plaintiff shall identify every physician, psychologist, psychiatrist, counselor, mental health professional, doctor, physical therapist or other health care provider he has seen from January 1, 1989 to the present for purposes of diagnosis, treatment, assessment, counseling or any other care, which he has not previously identified;

(2) Within one (1) week of the entry of this Order, Plaintiff shall produce all medical and psychological records from January 1, 1989 to the present by completing and executing HIPAA-compliant medical authorization forms (to be provided by Defendants), and by providing copies of any actual records in his possession;

(3) Within one (1) week of the entry of this Order, Plaintiff shall produce his unredacted bank statements for tax year 2005;

//

//

(4) Protective Order:

(a) Materials produced pursuant to Orders 1, 2, and 3 may be disclosed only to the

ORDER – 9

following persons: (i) counsel of record for any party to this action; (ii) those assisting counsel for any party to this action; (iii) this Court, including personnel and court reporters engaged in proceedings that are necessarily incidental to preparation for trial and the actual trial of this action; (iv) any outside expert, consultant, or investigator retained by any party in connection with this action, to the extent that such disclosure is necessary in connection with this action; and (v) the parties themselves, to the extent necessary for the purposes of this action (for parties that are entities, disclosure pursuant to this subparagraph is limited to those employees or officers of the party who have a need to receive the information consistent with the purposes of this action);

    (b) Defendants shall only use the documents produced pursuant to Orders 1, 2, and 3 for purposes of this litigation and shall ensure that no persons except those listed in Order 4(a) have access to the documents or the information therein. The documents produced pursuant to Orders 1, 2, and 3 shall not be docketed for any reason unless they are designated "HIGHLY CONFIDENTIAL—SEALED SUBJECT TO COURT ORDER" and also filed under seal. Any pleadings and court filings that incorporate, disclose, or refer to the documents produced pursuant to Orders 1, 2, and 3 also shall be designated "HIGHLY CONFIDENTIAL—SEALED SUBJECT TO COURT ORDER" and filed under seal. The documents produced pursuant to Orders 1, 2, and 3 shall not be available to the public or to non-expert witnesses unless and until they become necessary as part of Defendants' presentation at trial and then are released by order of this Court. The provisions of the parties' Stipulated Protective Order, dated December 22, 2004 (Dkt. No. 14) apply to documents produced pursuant to Orders 1, 2, and 3, except where those provisions differ from this Order. Further, documents produced pursuant to Orders 1, 2, and 3 shall be considered "highly confidential" even without an actual designation as such on their face, envelope, or container;

(5) If Plaintiff has not complied in full with Orders 1, 2, and 3 within one (1) week of the entry of this Order, Defendants are directed to notice the Court;

ORDER – 10

(a) Upon notice by Defendants that Plaintiff has failed to comply in full with Orders 1 and 2, Plaintiff's damage claim for exacerbation of his involuntary movement disorder will be dismissed with prejudice, and he will be precluded from introducing any evidence at trial (including his own testimony) about any link between his involuntary movement disorder and the actions of Defendants;

(b) Upon notice by Defendants that Plaintiff has failed to comply in full with Order 3, Plaintiff will be subject to a daily monetary sanction of $100 per judicial day that the records remain unproduced;

(6) Plaintiff shall pay Defendants' costs and attorney's fees associated with bringing this motion in the amount of $4,750.00.

SO ORDERED this 4th day of January, 2006.

John C. Coughenour

United States District Judge

ORDER – 11